UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**VIKKI STREET**,                                                    Civil Case No. 3:11-CV-00364-KI

      Plaintiff,

              OPINION AND ORDER

       v.

**MICHAEL J. ASTRUE**,
Commissioner of Social Security,

      Defendant.


    Merrill Schneider
    P. O. Box 14490
    Portland, Oregon  97293

      Attorney for Plaintiff

    S. Amanda Marshall
    United States Attorney
    District of Oregon


Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97201-2902

Kathy Reif
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Vikki Street brings this action pursuant to section 205(g) of the Social Security

Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying plaintiff's application for supplemental security income benefits ("SSI").

I affirm the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits

to people who have contributed to the Social Security program and who suffer from a physical or

mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security

income benefits may be available to individuals who are age 65 or over, blind, or disabled, but

who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which can be expected to

cause death or to last for a continuous period of at least twelve months.  42 U.S.C.

Page 2 - OPINION AND ORDER

§§ 423(d)(1)(A), 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The evaluation is carried out by the Administrative Law Judge ("ALJ").  The claimant has the burden of proof on the first four steps.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920.  First, the ALJ determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the

Page 3 - OPINION AND ORDER

claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, the ALJ makes a finding of "not disabled" and disability benefits are denied. 20 C.F.R. §§ 404.1520(e), 416.920(e).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is unable to perform other work. 20 C.F.R. §§ 404.1520(f), 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

## THE ALJ'S DECISION

After reviewing Street's medical records, the ALJ found that Street had severe impairments of bipolar disorder, seizure disorder, post traumatic stress disorder, anxiety disorder, obesity, and coronary artery disease post stent. The ALJ also found that these impairments, either singly or in combination, were not severe enough to meet or medically equal the

requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1.  The

ALJ concluded that Street had the residual functional capacity to perform light work; that she can

lift and carry up to ten pounds frequently and twenty pounds occasionally; that she can sit, stand,

and walk up to six hours out of an eight-hour day; that she had to avoid several hazards; that she

can understand, remember, and carry out short simple instructions; that she can tolerate

occasional interaction with the general public; and that she can have superficial contact with

co-workers.  Based on the testimony of a vocational expert, the ALJ found that Street could work

as a produce sorter, small products assembler, and laundry folder and, thus, was not disabled

under the Act.

## FACTS

Street, who was 41 years old at the time of the ALJ's decision, claims her disability began

on June 14, 2007[1] due to a seizure disorder, bipolar disorder, post traumatic stress disorder,

anxiety disorder, sleep apnea, migraines, and pain in her back, neck, and legs.  Street earned a

GED and has limited work experience in fast food restaurants and retail stores.

Street reported a difficult early life to the mental health providers.  She spent many years

in foster care, beginning at the age of four, and was sexually abused as a child.  Street had two

daughters before she was 18 years old.  When she was in her early twenties, Street was convicted

of forgery and served 19 months of a 10-year, 6-month sentence.  She was addicted to

methamphetamine for two or three years but reports being clean since December 2006.[2]

---

[1] The date of the current SSI application.

[2] The record contains various clean dates and relapses.  Tr. 382, 469.

Street has had four psychiatric hospitalizations:  six weeks at the age of 12 for a suicide attempt; two weeks at the age of 19 for a suicide attempt; for an unknown period at the age of 25 for overdosing on pills; and for five days at the age of 37 for suicidal thoughts.  She suffers from a seizure disorder which causes one or two grand mal seizures or petit mal seizures every two weeks.  Street explained at the September 29, 2009 hearing that medication decreases the number of seizures but she still suffered one or two seizures every two weeks.  Some medical records, however, state that Street was remaining seizure free on the medication.  Tr. 692 (Oct. 27, 2008), 709 (Mar. 4, 2009), 704 (June 9, 2009), 699 (Aug. 20, 2009).

## DISCUSSION

I.    <u>Severe Impairments</u>

The ALJ found that Street had severe impairments of bipolar disorder, seizure disorder, post traumatic stress disorder, anxiety disorder, obesity, and coronary artery disease post stent. Street argues the ALJ erred by failing to classify her depression and sleep apnea as severe impairments.  She claims both impairments cause more than minimal limitations.

The Commissioner contends that the symptoms to which Street refers–anger, irritability, racing thoughts, mood changes, decreased energy, and poor focus and concentration–were attributed by her medical providers to her bipolar disorder.  The Commissioner argues that Street did not identify any limitations omitted from the residual functional capacity due to the ALJ's failure to list depression and sleep apnea as severe impairments.

The ALJ can find an impairment or combination of impairments non-severe "*only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  <u>Webb v. Barnhart</u>, 433 F.3d 683, 687 (9th Cir. 2005) (internal

Page 6 - OPINION AND ORDER

quotation omitted).  The failure to list an impairment as a severe impairment is a harmless error if, in determining the claimant's residual functional capacity, the ALJ considers any limitations caused by the impairment.  Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).

Bipolar disorder includes symptoms of both mania and depression.  See Adventist Medical Center Home Care:  Bipolar Disorder ("Bipolar disorder . . . is a mental illness involving episodes of serious mania and depression."), Tr. 270.  Street received one or the other diagnosis from her health care providers, but she clearly had more trouble with depressive episodes than with manic episodes.  In the residual functional capacity, the ALJ accounted for Street's mental impairment symptoms by limiting her to short simple instructions, occasional interaction with the general public, and superficial contact with coworkers.  Street has not identified any symptoms which can be attributed to depression that cannot also be attributed to bipolar disorder.  Thus, the ALJ considered all mental limitations, whether caused by bipolar disorder or depression.  Any error was harmless.

With respect to the sleep apnea, a neurologist referred Street for a sleep study to evaluate possible sleep apnea.  On the prescription, Dr. Nilaver stated that Street had a seizure disorder with a history of altered sleep and lowering of seizure threshold.  Tr. 266.  The ALJ considered Street's seizure disorder to be a severe impairment and took it into account when determining the residual functional capacity.  The limitations for Street's mental symptoms would take care of symptoms caused by the altered sleep.  Street has not identified any additional symptoms.  Again, the ALJ did not err in failing to characterize the sleep apnea as a severe impairment.

Street contends the ALJ erred by failing to consider the combined effects of her severe and non-severe impairments, including attention deficit hyperactivity disorder, poly-substance

abuse in remission, cellulitis, hepatitis C, and diabetes mellitus, as well as the combined effect of obesity. Street failed to explain what additional symptoms are caused by these impairments, however, which the ALJ failed to take into account. The ALJ has not committed an error.

II.    Street's Credibility

Street contends the ALJ improperly rejected her subjective symptom testimony. The Commissioner argues the ALJ's reasons are all valid.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. Id. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." Holahan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination, and the ALJ must rely on substantial evidence. Id. "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Page 8 - OPINION AND ORDER

The ALJ gave several reasons to find Street's subjective symptom testimony not credible to the extent it was inconsistent with the ALJ's residual functional capacity assessment. He reasoned that Street's conservative and routine treatment was not consistent with disabling levels of pain. Failure to seek aggressive treatment is a legitimate reason to determine that a claimant's pain is not as disabling as the claimant reports. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008). Street is prescribed medication for her seizure disorder and mental impairments. The ALJ noted, however, that Street often stopped taking her medication for various reasons and repeatedly skipped medical appointments to the point that some doctors refused to schedule another. The medical records support the ALJ's reasoning. Id. (unexplained failure to follow a prescribed course of treatment is a credibility factor). The ALJ's reasoning is sound.

The ALJ relied on Street's criminal history, including a forgery conviction. He incorrectly noted that she served over ten years for the offense. Street objects to the ALJ holding against her a shadow of her past from two decades ago. The Commissioner argues the ALJ properly relied on Street's criminal history because it included a conviction for a crime involving dishonesty.

At a psychiatric examination at Cascadia Behavioral HealthCare, Street told Dr. Conour that when she was on probation, she was convicted of forgery and sentenced to ten years and six months. She served 19 months at Oregon Women's Correction Center. Street was in her early twenties at the time of the conviction. In considering a claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying." Id. Although the ALJ confused the length of Street's sentence with the length of time she actually

served, he was correct that Street was convicted of forgery.  Forgery is a crime of dishonesty.

Thus, the ALJ did not err in relying on Street's criminal history, even though it is dated.

The ALJ noted Street's daily activities of caring for herself, feeding herself, using public transportation, shopping, and taking care of her five and seven year old granddaughters.  The ALJ concluded that this level of activity indicated a level of functioning greater than what Street claimed.

Street contends her symptoms have become so severe that she cannot care for herself. She notes her daughter's statement that Street's activities are limited to eating frozen dinners and sandwiches and living in a homeless shelter.

Although Street did state in a form that she cares for two girls, Street's daughter clarified that Street only occasionally watches her grandchildren.  That fact slightly diminishes the weight of this reason.  The ALJ's reliance on other activities is supported by the record, however.

Street completed a form on April 29, 2009 listing four part-time jobs she held in 2007 and 2008, some for three to four months at a time.  Street performed all of these jobs after the date on which she claims to have become disabled.  Although the jobs were not full time, they are indicative that Street is able to leave home and take part in more activity than she reported she was capable of.

In sum, the ALJ has given clear and convincing reasons for discrediting Street's subjective symptom testimony, and the reasons are well supported by the record.  The ALJ did not err.

Page 10 - OPINION AND ORDER

III.    Opinions of Medical Providers

Street claims the ALJ erred in failing to consider the opinion of Dr. Mengis and improperly rejecting the opinion of PA-C Martin.

The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  Id. (treating physician); Widmark v. Barnhart, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician).  Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  Orn, 495 F.3d at 632; Widmark, 454 F.3d at 1066.  The opinion of a nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician.  Widmark, 454 F.3d at 1066 n.2.

A.    Dr. Mengis

Street argues the ALJ erred in failing to consider and discuss the treatment notes of Dr. Mengis.  Because Dr. Mengis assessed Street with a Global Assessment of Functioning ("GAF") of 45, Street claims her limitations in concentration and social functioning were more "marked" than "moderate" or "mild," as assessed by the ALJ.  Street also notes that one of the state agency medical reviewers, Dr. Eder, did not have the opportunity to consider Dr. Mengis' report but the ALJ adopted Dr. Eder's residual functional capacity assessment anyway.

Page 11 - OPINION AND ORDER

The Commissioner argues that since the ALJ's decision is consistent with Dr. Mengis' report, the ALJ did not reject her opinion and had no obligation to discuss it.

On January 14, 2009, Dr. Mengis examined Street and diagnosed her with bipolar disorder, mixed state; post traumatic stress disorder, chronic; and rule out attention deficit hyperactivity disorder, inattentive type. Based on Street's performance on a mini-mental status examination, Dr. Mengis found that Street's concentration appeared poor. Dr. Mengis also commented that Street benefitted from her medications but complained of sleep disturbance, anger, and irritability. Dr. Mengis noted that Street had moderate to severe psychosocial stressors of unemployment and some estrangement from her family, and she assessed Street with a GAF of 45. In the plan, Dr. Mengis stated that Street would follow up with her mental health provider at the Old Town Clinic, Carol Burckhardt, a psychiatric mental health nurse practitioner, and Dr. Mengis would discuss dosages for Street's medications with PMHNP Burckhardt.

"A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 723 n.1 (9th Cir. 2011) (internal quotation omitted). A GAF of 45 is defined to be "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (DSM-IV) 34 (2000).

As noted in Keyser, a GAF score is very rough indeed, summing up a patient's situation with a single number. Dr. Mengis did not complete a medical source statement giving specific

limitations for Street in more precise areas of mental functioning.  An ALJ does not have to

discuss evidence that is neither significant nor probative.  <u>Howard v. Barnhart</u>, 341 F.3d 1006,

1012 (9th Cir. 2003).  Dr. Mengis' opinion did not limit Street more significantly than the

opinions of Dr. Henry and Dr. LeBray, both of which were discussed by the ALJ.  More

importantly, the ALJ took into consideration Dr. Mengis' opinion about poor concentration and

irritability by limiting Street to short, simple instructions, only occasional interactions with the

public, and only superficial contact with co-workers.

For these reasons, the ALJ did not err by failing to specifically discuss the opinion of

Dr. Mengis.

B.    <u>PA-C Martin</u>

Street contends the ALJ erred by rejecting the opinion of her primary care provider, PA-

C Martin, that Street would miss more than three days of work a month and that she would meet

the criteria for being disabled due to physical and mental health conditions.

The Commissioner only gave some weight to PA-C Martin's opinion because:  it was a

conclusion specifically reserved for the Commissioner; it did not take into account Street's

activities of daily living as shown by her use of public transportation, shopping, and crocheting;

and it was not in accordance with the medical evidence as a whole.

The ALJ did not err in rejecting PA-C Martin's ultimate conclusion that Street was

disabled.  Under the regulations, an opinion that a claimant is disabled is not a medical opinion

and is reserved to the Commissioner because the opinion is an administrative finding that would

be dispositive of the case.  20 C.F.R. § 416.927(e)(1).

Page 13 - OPINION AND ORDER

According to Street, PA-C Martin is a medical source who worked in close coordination with Dr. Mengis and thus should be considered an acceptable medical source.  Street claims that PA-C Martin's evaluation is consistent with the other treatment providers and departs only from the opinions of the non-examining medical reviewers.

The Commissioner disputes Street's argument that PA-C Martin should be considered an acceptable medical source.  According to the Commissioner, PA-C Martin, a certified physician's assistant, has less education than a nurse practitioner and cannot be treated the same.  Moreover, the Commissioner argues that PA-C Martin did not work closely with Dr. Mengis.

The opinion of a nurse practitioner is considered the opinion of an "acceptable medical source" to the extent the nurse practitioner works closely with and is supervised by an acceptable medical source.  Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1233 (9th Cir. 2011).  There is no evidence that PA-C Martin was supervised by Dr. Mengis, even though both worked at the Old Town Clinic.  Dr. Mengis appeared to be in closer contact, and intended to discuss Street's case, with PMHNP Burckhardt.  Thus, PA-C Martin is an "other source," 20 C.F.R. § 404.1513(d), and the ALJ can reject her testimony if he gives reasons germane to the witness.  Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010).

The Commissioner contends that the long list of nonexamining medical sources who disagree with PA-C Martin's opinion provide adequate evidence for the ALJ to discount it.  None of the following nonexamining medical sources thought Street would miss as much work as opined by PA-C Martin:  Dr. Henry, psychologist; Dr. LeBray, psychologist; Dr. Alley, M.D.; Dr. Kehrli, M.D.; Dr. Eder, M.D.; and Dr. Rethinger, psychologist.  This is sufficient evidence to

support the ALJ's reason that PA-C Martin's opinion was not in accord with the medical

evidence as a whole.  The ALJ did not err.

IV.    <u>Listed Impairments</u>

Street contends the ALJ erred by failing to find that her impairments met or equaled

Listing 12.04, Affective Disorders.  Street bases her argument on the opinions of Dr. Mengis and

PA-C Martin.

The ALJ did not err in giving little weight to those opinions, however, so Street has no

support for her argument that she meets Listing 12.04.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and

the correct legal standards.  For these reasons, the court affirms the decision of the

Commissioner.

IT IS SO ORDERED.

Dated this _____6th_____ day of June, 2012.


                                    ___/s/ Garr M. King_____
                                    Garr M. King
                                    United States District Judge